Carlisle A. Braun
**SAUNDERS WALSH & BEARD**
6850 TPC Drive, Suite 210
McKinney, Texas 75070
Telephone: (214) 919-3555
Facsimile: (214) 945-4060
*Attorneys for LaCore Enterprises, LLC and*
*Link Biosciences, Inc.*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### (DALLAS DIVISION)

| | | |
|---|---|---|
| In re: | § § § | CASE NO. 23-31749-swe7 |
| **MICHAEL LEROY KEARL,** | § § § | Chapter 7 |
| Debtor. | § § § | |
| **LACORE ENTERPRISES, LLC and LINK BIOSCIENCES, INC. f/k/a LINK BIOSCIENCES, LLC,** | § § § § § § | Adversary No.: _____ |
| Plaintiffs, | § § | |
| v. | § § § | |
| **MICHAEL LEROY KEARL** | § § § | |
| Defendant. | § § | |

## PLAINTIFFS LACORE ENTERPRISES, LLC AND LINK BIOSCIENCES, INC.'S
### COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs LaCore Enterprises, LLC and Link Biosciences, Inc. f/k/a Link Biosciences, LLC and would show the Court as follows:

## I. PARTIES

1. Plaintiff LaCore Enterprises, LLC ("LaCore") is a Texas limited liability company with a principal place of business located at 901 Sam Rayburn Hwy, Melissa, Texas 75454.

2. Plaintiff Link Biosciences, Inc. f/k/a Link Biosciences, LLC ("Link") is a Texas corporation with a principal place of business located at 901 Sam Rayburn Hwy, Melissa, Texas 75454.

3. Defendant Michael Leroy Kearl ("Kearl") is an individual and resident of Texas who may be served at his residence located at 301 Hackberry Street, Princeton, Texas 75407 or wherever he may be found.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(i) and (j) because the relief requested in the Complaint directly impacts objections to the dischargeability of debts.

6. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 because Kearl resides in the Northern District of Texas, and a number of the acts or omissions giving rise to the claims set forth herein occurred in the Northern District of Texas.

## III. FACTUAL BACKGROUND

7. In 2011, LaCore was formed as a consulting firm supporting businesses in the domestic multi-level marketing ("MLM") industry. Since that time, LaCore has grown into a full-service firm serving global MLM markets through integrated business services, including product development, a testing lab, merchant processing, a state-of-the-art manufacturing plant, warehousing and fulfillment operations.

### A. LaCore Purchased GeneLink's Assets for Use by Link

8. On or about December 28, 2017, LaCore and GeneLink, Inc. ("GeneLink") executed an Asset Purchase Agreement whereby LaCore purchased and/or assumed substantially all of GeneLink's assets. At the time of the asset purchase, GeneLink was the original DNA based custom supplement company. It manufactured custom nutritional supplements and skin care products personalized to an individual's DNA.

9. As part of the transaction, LaCore specifically purchased GeneLink's intellectual property, including all rights and protections to GeneLink's (1) inventions, discoveries, trade secrets, business and technical information and know-how, databases, data collections and other confidential and proprietary information and all rights therein; (2) patents (including all reissues, divisionals, provisionals, continuations and continuations-in-part, re-examinations, renewals, substitutions and extensions thereof), patent applications, and other patent rights and any other Governmental Authority-issued indicia of invention ownership (including inventor's certificates, petty patents and patent utility models); and, (3) software and firmware, including data files, source code, object code, application programming interfaces, architecture, files, records, schematics, computerized databases and other related specifications and documentation.

10. LaCore purchased GeneLink's assets for use by Link, an affiliate of LaCore. Link is a comprehensive, genomic, and biochemical-based nutritional and metabolic health company. It uses scientific methods to provide the best-in-class clinical evidence to optimize your health by balancing fundamental cellular and tissue homeostasis.

### B. Michael Smith is a Former CEO of Link

11. Michael Smith ("Smith") led the sale of GeneLink's assets to LaCore. At the time of the asset purchase, Smith was the Chief Operating Officer of and a shareholder in GeneLink.

Previously, Smith was the Vice-President of Operations for GeneLink. During his tenure at GeneLink, Smith learned the science and technology behind individualized supplements.

12.     After the asset purchase closed, Smith became the Chief Executive Officer of Link. Smith served in that role for nearly 3 years before separating from Link. As part of his separation, on or about July 16, 2020, Smith executed a Confidential Separation and Release Agreement (the "Smith Agreement"). Pursuant to sections 10 and 11 of the Smith Agreement, Smith is prohibited from directly or indirectly using or disclosing Link's confidential information, trade secrets and other proprietary information without written permission from Link. No such written permission has ever been given to Smith. In addition, section 3 of the Smith Agreement prohibited Smith for a period of four (4) months from being employed by, consulting with or having an interest in any ownership interest in any activity involving customized nutrition or specialty blending of nutritional products. Smith agreed to such prohibitions in exchange for his significant exposure to Link's confidential and proprietary information and trade secrets as an employee and officer of Link. Lastly, the Smith Agreement prohibits Smith from soliciting or entertaining inquiries from the Company's vendors and/or suppliers for a period of twenty-four (24) months.

## C. KEARL IS FORMER CTO OF LACORE

13.     Kearl is the former Chief Technology Officer of LaCore. During his tenure at LaCore, upon information and belief, Kearl learned the science and technology behind individualized supplements.

14.     On or about July 14, 2020, Kearl executed a Confidential Separation and Release Agreement (the "Kearl Agreement"). Pursuant to sections 9 and 10 of the Kearl Agreement, Kearl is prohibited from directly or indirectly using or disclosing LaCore's confidential information,

trade secrets and other proprietary information without written permission from LaCore. No such written permission has ever been given to Kearl.

D. **KEARL AND SMITH USED THE VIRTUAL FORMULA TO COMPETE WITH LACORE AND LINK**

15. Shortly after separating from LaCore and Link, respectively, Kearl and Smith began improperly competing and violated their respective agreements.

16. On or about July 29, 2020, about two weeks after execution of the Smith Agreement and the Kearl Agreement, Smith reinstated the corporate status of The Virtual Formula, LLC ("TVF"). Smith is the Co-Founder and President of TVF. Kearl is or was the Chief Technology Officer of TVF.

17. TVF represents to prospective investors that it will create significant financial value by developing intellectual property and recurring revenue streams that will service multiple sales and distribution markets in the field of individualized nutritional supplements and skin care. Using its executive team's current contacts and additional contacts identified from their experience in the individualized nutritional supplements and skin care, TVF intends to achieve multiple revenue sources: (1) consumable product line including off-the-shelf as well as individualized supplements and skin care; (2) DNA results and reports, including a DNA based meal plan, plus opportunities for other types of DNA testing including full genome sequencing and a methylation life cycle test (3) licensing fees and recurring revenue from both exclusive and non-exclusive partners offering true private / white label opportunities; and, (4) additional contract manufacturing capabilities including unique software interface for processing and fulfilling orders for off-the-shelf as well as individualized supplements and skin care.

18. By February 23, 2021, only a few short months after Kearl separated from LaCore and Smith separated from Link, TVF already had in its possession the following intellectual

property: (1) DNA custom array analysis and reporting; (2) custom and flexible survey engine; (3) metabolic results integration; (4) proprietary supplement and skin care formulations; (5) drug / supplement contraindications, depletions, and potentiators database; (6) clinical studies and outcomes; (7) focused and comprehensive health knowledgebase and repository; (8) 5-point unique software automation and interface to connect the complete business model together; (9) custom and on-the-fly supplement facts capability; (10) multiple diagnostic input to arrive at a custom formula algorithm; (11) manufacturing automation including quoting, demand planning, batch management, and inventory capabilities; (12) automated filling machines and process creation; (13) custom formulation procedures and process control and (14) custom order fulfillment process.

19. Also by February 23, 2021, TVF already had in place: (1) an executive team; (2) an agreement with the lab processor and data analytic company; (3) an agreement with the initial manufacturer; (4) 5 initial DNA reports developed with another 5 being reviewed; (5) development of software; (6) the ability to process DNA; (7) initial individualized formulas; (8) pre-sales across multiple channels; sales representative groups and; (9) strategic sales and supplier partnership conversations.

20. Knowing that any economic advantage over competitors in the individualized supplements and skin care could suffer were competitors to use TVF's purported intellectual property, TVF represents to prospective investors that it will use part of investor proceeds to protect its purported proprietary technology, formulation, and methodologies, with respect to its significant current or proposed products. Further, TVF represented to prospective investors that competition could adversely impact its sales, revenue, cash flow and profitability.

21. Additionally, TVF intends to create barriers to entry through its purported intellectual property to thwart competition in its space. In particular, TVF is working to development a manufacturing process and delivery system that will make it easier for companies to partner with TVF than to compete with it. After more than 6 months of research, i.e., only a few weeks after Kearl separated from LaCore and Smith separated from Link, TVF represents to prospective investors that it could not locate a manufacture partner.

E.  CLAIRE ANGLES IS OR WAS KEARL'S LIVE-IN GIRLFRIEND AND FORMER EMPLOYEE OF LACORE

22. Claire Angles ("Angles") was an accounting clerk for LaCore and offices in the corporate office located in Collin County, Texas. Angles' job duties were as assigned by LaCore management. In any event, in connection with her employment as an accounting clerk, Angles executed an "Employee Nondisclosure Agreement" (the "Angles Agreement"). Pursuant to the Angles Agreement, Angles agreed to keep confidential and not disclose to third parties any of LaCore's trade secrets and/or confidential information without written consent of LaCore. LaCore has never given Angles written consent to disclose any trade secrets and/or confidential information. The Agreement specifically notes that disclosure of LaCore's trade secrets and/or confidential information will constitute irreparable harm and, therefore, provides for the injunctive relief sought herein.

23. Additionally, Angles is or was Kearl's live-in girlfriend who was placed on administrative leave from LaCore in or about early 2021. On or about February 18, 2021, LaCore advised Angles that it was terminating her employment with LaCore but would continue to pay Angles her salary and benefits for a 90-day period while she focused on securing new employment. When LaCore learned of the March 5, 2021 IP theft, discussed further below, Angles' administrative leave ended and her employment was terminated effective March 9, 2021.

### F. AFTER DEMAND LETTERS, ANGLES BEGAN STEALING PLAINTIFFS' IP

24. On March 4, 2021, LaCore served written demand letters to TVF, Smith and Kearl in connection with their (mis)use of LaCore, Link and their affiliates confidential information for the purposes of competing with LaCore, Link and their affiliates.

25. On March 5, 2021, the day after service of the demand letters, LaCore discovered that Angles had reset her LastPass account (the software program utilized by LaCore to securely store company-related passwords in one location) password and had begun copying and/or transferring LaCore's trade secrets and/or confidential information from LaCore's data servers and online data storage to Angles' personal Gmail account. For example, by improperly accessing the LastPass account, Angles gained the passwords necessary to freely access LaCore's confidential and trade secret information including but not limited to financials, bank accounts, customer and vendor information, and personal bank account information and emails for the vast network of independent distributors that are paid by LaCore owned or supported MLM companies.

26. Upon information and belief, Angles did so to disclose the confidential and proprietary information to third parties, including Kearl and TVF, in an attempt to give those third parties an economic advantage to compete with LaCore and its affiliates. Further, upon information and belief, Angles is copying and/or transferring LaCore's trade secrets and/or confidential information to interfere with LaCore's customers and/or vendors in an attempt to solicit those customers and/or vendors away from conducting business with LaCore and its affiliates.

27. When it was discovered on March 5, 2021 that Angles was stealing Plaintiffs' intellectual property, LaCore management repeatedly requested that Angles come to Plaintiffs' corporate office to discuss in person Angles' transfer of intellection property from the corporate

servers and databases to her personal Gmail account. Angles never meet with LaCore (in person, remotely or otherwise,) regarding her theft of Plaintiffs' intellectual property and ceased all communication thereafter.

### G. Plaintiffs filed suit against Kearl, Smith, Angles, and TVF in Collin County District Court

28. Due to Kearl, Smith, Angles, and TVF's improper copying, transferring, using, disclosure, etc., of Plaintiffs' trade secrets and/or confidential information, Plaintiffs filed a lawsuit in Collin County District Court (the "State Court Lawsuit"): (1) LaCore sought and obtained a temporary restraining order enjoining Defendant Angles from further harming LaCore and ordering the return the stolen information, (2) LaCore and Link sought and obtained a temporary restraining order enjoining Angles, Smith, Kearl, and TVF from disclosing or using Plaintiffs' confidential information and ordering the return of the stolen information, and (3) LaCore and Link obtained a temporary injunction which prohibited Angles, Smith, Kearl, and TVF from disclosing or using Plaintiffs' confidential information. Plaintiffs also brought causes of action against Kearl, Smith, Angles, and/or TVF for breach of contract, breach of fiduciary duty, and TUTSA Violations.

### H. Kearl, Smith, and Angles Retaliated Against Plaintiffs by Filing Frivolous Claims Against Plaintiffs

29. In response to Plaintiffs' right to petition in the State Court Lawsuit, Kearl, Smith, Angles, and/or TVF filed 48 counterclaims and 6 requests for injunctive relief against Plaintiffs:

| **Defamation** | **Abuse of Process** | **Business Disparagement** |
|---|---|---|
| - Smith v. LaCore<br>- Smith v. Link<br>- Kearl v. LaCore<br>- Kearl v. Link<br>- Angles v. LaCore<br>- Angles v. Link<br>- TVF v. LaCore<br>- TVF v. Link | - Smith v. LaCore<br>- Smith v. Link<br>- Kearl v. LaCore<br>- Kearl v. Link<br>- Angles v. LaCore<br>- Angles v. Link<br>- TVF v. LaCore<br>- TVF v. Link | - Smith v. LaCore<br>- Smith v. Link<br>- Kearl v. LaCore<br>- Kearl v. Link<br>- TVF v. LaCore<br>- TVF v. Link |
| **Anti-Trust Violations** | **TUTSA** | **Unfair Competition** |
| - Smith v. LaCore<br>- Smith v. Link<br>- Kearl v. LaCore<br>- Kearl v. Link<br>- TVF v. LaCore<br>- TVF v. Link | - Smith v. Link<br>- Smith v. LaCore<br>- TVF v. LaCore<br>- TVF v. Link | - Smith v. LaCore<br>- Smith v. Link<br>- TVF v. LaCore<br>- TVF v. Link |
| **Tortious Interference with Business Relations** | **Tortious Interference with Contract** | **Declaratory Judgment** |
| - TVF v. LaCore<br>- TVF v. Link | - TVF v. LaCore<br>- TVF v. Link | - Smith v. Link<br>- Kearl v. Link<br>- TVF v. LaCore<br>- TVF v. Link |
| **Fraud** | **Breach of Contract** | **Unlawful Termination** |
| - Smith v. LaCore | - TVF v. LaCore | - Angles v. LaCore |
| **Retaliation** | | |
| - Angles v. LaCore | | |

30. Through the foregoing meritless counterclaims, Kearl attempted to punish Plaintiffs for filing the State Court Lawsuit and intimidate them into silence. Kearl, Smith, Angles, and/or TVF sued Plaintiffs for (1) defamation, business disparagement, TUTSA violations, and breach of contract because of statements made in Plaintiffs' Petition; (2) anti-trust violations, unfair

competition, tortious interference with contract, and tortious interference with business relationships because Plaintiffs filed the State Court Lawsuit and sought judicial relief; and (3) abuse of process because Plaintiffs served the defendants, including Kearl, with various pleadings, filings, and injunctive orders in the State Court Lawsuit. These counterclaims lacked merit at the filing and were prosecuted without merit over the course of nearly 2 years.

### I. THE DALLAS COURT OF APPEALS FOUND THAT 40 OF THE COUNTERCLAIMS LACKED EVIDENCE AND SHOULD BE DISMISSED

31. Plaintiffs moved to dismiss 46 of Kearl, Smith, Angles, and/or TVF's counterclaims pursuant to the Texas Citizens Participation Act ("TCPA"). The Dallas Court of Appeals determined that the TCPA applied to 40 counterclaims because they were based on and in response to Plaintiffs' exercise of their right to petition. After finding the TCPA applied to the majority of the counterclaims, the Dallas Court of Appeals found that Kearl, Smith, Angles, and TVF failed to meet their low evidentiary burden to support 40 counterclaims. In other words, Kearl, together with Smith, Angles, and TVF, engaged in extensive written discovery, motion practice and otherwise occupied Plaintiffs and various Courts' time and resources with meritless counterclaims.

### J. KEARL'S COUNTERCLAIMS WERE PART OF A BROADER PATTERN TO ABUSE AND SILENCE PLAINTIFFS

32. Kearl repeatedly (1) complained about Plaintiffs' filing the State Court Lawsuit; (2) requested the Court strike Plaintiffs' filings in the State Court Lawsuit, including Plaintiffs' Petition; (3) requested sanctions against Plaintiffs, Plaintiffs' agents, and Plaintiffs' counsel; (4) requested the Court prohibit Plaintiffs, Plaintiffs' agents, Plaintiffs' affiliates, and even Plaintiffs' counsel from filing additional claims against Kearl without leave from the Collin County District Court. This abusive behavior did not go unnoticed by the Dallas Court of Appeals.

33. After repeatedly arguing that Plaintiffs' State Court Lawsuit was abusive, harassing, frivolous, etc., Kearl bragged that:

> … **the Counterclaims were brought to show [Plaintiffs] that they cannot continue to 'run over' their former employees and alleged competitors [i.e., Kearl] with abusive litigation tactics.**

34. Rather than grounding their claims in a demonstrable injury supported by even a minimum amount of evidence, Kearl's counterclaims were motivated by Kearl's improper desire to send a message to Plaintiffs. As a result of this misuse of the judicial process, Plaintiffs have been forced to spend more than two years of time and incur over one hundred thousand dollars of attorneys' fees and costs to secure the dismissal of 40 of Kearl, Smith, Angles, and TVF's frivolous counterclaims.

K. THE COURT OF APPEALS DISMISSED THE FRIVOLOUS COUNTERCLAIMS AND ORDERED THE TRIAL COURT DETERMINE WHETHER ATTORNEYS' FEES AND COURT COSTS SHOULD BE AWARDED TO PLAINTIFFS AGAINST KEARL

35. The Dallas Court of Appeals dismissed the 40 frivolous counterclaims filed by Kearl, Smith, TVF, and Angles, and ordered that the trial court determine whether attorneys' fees and court costs should be awarded against Kearl, Smith, TVF, and Angles.

36. All of the above demonstrates Kearl's intent to use for the benefit of and/or disclose LaCore and/or Link's trade secrets and/or confidential information to third-parties to gain a competitive advantage over LaCore, Link and their affiliates, steal LaCore, Link and their affiliates' customers and/or vendors and harm LaCore, Link and their affiliates. Kearl's conduct is malicious and in disregard of the Angles Agreement and her fiduciary duties to LaCore. Due to the wrongful conduct of Kearl, Plaintiffs seek an award of all damages related to the improper conduct of Kearl made the basis of this suit.

## IV. CAUSES OF ACTION

COUNT 1 – BREACH OF CONTRACT

37. The factual allegations set forth in the foregoing paragraphs are incorporated herein by reference for all purposes as if set forth in full.

38. LaCore and Kearl entered into the Kearl Agreement. In that agreement, Kearl agreed to not use and/or disclose LaCore's trade secrets, confidential information, and/or other proprietary information without written consent of LaCore. LaCore never gave Kearl written consent to disclose any trade secrets and/or confidential information. Kearl breached the agreement using and/or disclosing LaCore's trade secrets, confidential information, and/or other proprietary information. As a result of Kearl's breach of the Kearl Agreement, LaCore has been damaged.

39. Because LaCore's trade secrets, confidential information, and/or other proprietary information were willfully and maliciously misappropriated, this Court should find the damages as a result of Kearl's actions to be nondischargeable pursuant to 11 U.S.C. §523(a)(6).

COUNT 2 – BREACH OF FIDUCIARY DUTY

40. The factual allegations set forth in the foregoing paragraphs are incorporated herein by reference for all purposes as if set forth in full.

41. As employees and/or officers of Plaintiff(s), Kearl, Smith, and Angles had a fiduciary relationship with Plaintiff(s). Kearl, Smith, and Angles owed the fiduciary duties of loyalty and care, full disclosure, and good faith and fair dealing to Plaintiff(s). Kearl, Smith, and Angles breached their respective fiduciary duties in a number of ways, including but not limited to the following:

    (a) copying and transferring, or participating in the copying or transferring, of Plaintiffs' confidential and proprietary information for the purpose of

        disclosing such information to third parties, including for the purpose of competing with Plaintiffs and to gain an unfair advantage;

(b)     failing to act in good faith toward Plaintiffs; and,

(c)     deriving, or attempting to derive, a personal profit or advantage at the expense of Plaintiffs.

42.     Additionally, Kearl participated in and benefitted from Angles and Smith's breaches of fiduciary duty, which are the proximate cause of Plaintiffs' actual damages, including economic damages, to Plaintiffs.

43.     Plaintiffs request the Court determine that the aforementioned damages as a result of Kearl's actions be nondischargeable pursuant to 11 U.S.C. §523(a)(4) and (6).

COUNT 3 – TUTSA VIOLATION

44.     The factual allegations set forth in the foregoing paragraphs are incorporated herein by reference for all purposes as if set forth in full.

45.     Plaintiffs had a possessory right to its trade secret and confidential information. Kearl wrongfully took and/or received and stored such information for his personal/business use and/or disclosed and transferred such information to third parties. In addition, upon information and belief, Kearl used and/or did use this information for the purpose of directly competing, or attempting to directly compete, with Plaintiffs and to gain a business advantage and usurp business opportunities belonging to Plaintiffs.

46.     Kearl misappropriated Plaintiffs' confidential information and trade secrets by using and/or disclosing such information without Plaintiffs' consent even though Kearl knew or had reason to know the information was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use. This is protected trade secret information from which Plaintiffs receive economic value. This information is generally unknown and is not readily

ascertainable. Plaintiffs have taken reasonable efforts to maintain its secrecy and/or limits its use. Kearl acquired this information by improper means, including through breaches of Smith, Kearl and Angles' duty to maintain secrecy of the information.

47. The trade secret information was misappropriated as defined by the Texas Uniform Trade Secrets Act ("TUTSA") in that Kearl has used the information to gain an advantage and steal and/or usurp business opportunities from Plaintiffs. Tex. Civ. Prac. & Rem. Code § 134A.002(3). As a result of this misappropriation, Plaintiffs' trade secret information has lost value and Plaintiffs have lost business opportunities and/or suffered harm.

48. Further, and upon information and belief, Kearl willfully and maliciously misappropriated Plaintiffs' trade secret information. As a proximate result of such willful and malicious action, Plaintiffs have suffered, and will continue to suffer, actual damages or loss, including loss of good will, harm to customer relationships, and loss of future contracts and business prospects, for which Kearl is fully liable.

49. Plaintiffs seek an award of exemplary damages in an amount of not more than two times the amount of actual damages awarded against Kearl pursuant to Texas Civil Practice and Remedies Code § 134A.004.

50. Additionally, because Plaintiffs' trade secrets, confidential information, and/or other proprietary information were willfully and maliciously misappropriated, this Court should find the damages as a result of Kearl's actions to be nondischargeable pursuant to 11 U.S.C. §523(a) (4) and (6).

COUNT 4 – DETERMINATION OF DISCHARGEABILITY OF COSTS AND FEES

51. The factual allegations set forth in the foregoing paragraphs are incorporated herein by reference for all purposes as if set forth in full.

52. By filing the voluminous frivolous counterclaims dismissed by the Dallas Court of Appeals, Kearl willfully and maliciously damaged and/or injured Plaintiffs in the form of expenses, costs and attorneys' fees. Kearl's conduct in filing, prosecuting and defending on appeal the voluminous frivolous counterclaims necessarily caused harm to Plaintiffs.

53. Accordingly, this Court should find the injury as a result of Kearl's actions to be nondischargeable pursuant to 11 U.S.C. §523(a)(6).

COUNT 5 – INJUNCTION

54. The factual allegations set forth in the foregoing paragraphs are incorporated herein by reference for all purposes as if set forth in full.

55. Plaintiffs are entitled to a Temporary Injunction and Permanent Injunction as authorized by Federal Rules of Civil Procedure 65.

56. It is well-settled that injunctive relief is recognized as a proper remedy to protect confidential information and trade secrets and is appropriate and necessary to prohibit an employee from using confidential information, including for the purpose of competing with the former employer. *See e.g., Rugen v. Interactive Bus. Sys., Inc.* 864 S.W.2d 548, 551 (Tex. App.—Dallas 1993, no writ). The purpose of an injunction is to remove the advantage created by the misappropriation. *See e.g., Elcor Chemical Corporation v. Agri-Sul, Inc.*, 494 S.W.2d 204, 212 (Tex.App.—Dallas 1973, ref. n.r.e.).

57. Plaintiffs have suffered an irreparable injury as a result of Kearl's improper acts and omissions made the basis of this lawsuit. The remedies available at law, such as monetary damages, are inadequate to compensate for that injury.

58. Unbeknownst to Plaintiffs, Kearl and Smith began violating the non-competition provision through TVF shortly after executing the Kearl Agreement and Smith Agreement. TVF

represents to the public that it is a re-launch of Smith's work in individualized supplements. After the non-competition term expired, Kearl and Smith then began raising funds for TVF. Once Plaintiffs discovered that Kearl and Smith were competing with Plaintiffs through TVF, Plaintiffs promptly sent cease and desist letters to Smith, Kearl and TVF. Tellingly, rather than comply, Angles began stealing Plaintiffs' confidential and proprietary information and thereafter refused to meet with Plaintiffs or return the stolen information.

59. The continued conduct by Kearl, if not enjoined as requested herein, is such that would render a judgment in Plaintiffs' favor ineffectual.

60. **Conduct to be Restrained.** In order to preserve the status quo pending the final trial on the merits of this case, Plaintiffs ask this Court to issue a Temporary Injunction to restrain and enjoin Kearl, his agents, attorneys, servants, representatives, affiliates, entities, successors, and assigns, and any and all other persons and entities under their control and/or direction, as well as the foregoing actively in concert and participation with Kearl, from engaging in any of the following:

    a.    Directly or indirectly disclosing or otherwise using for a third-party's benefit any of Plaintiffs and/or their affiliates' confidential and/or proprietary information obtained or developed during the time Angles is employed by LaCore;

    b.    Directly or indirectly disclosing or otherwise using for a third-party's benefit any of Plaintiffs and/or their affiliates' confidential and/or proprietary information obtained or developed during the time Angles was employed by LaCore, after such time as her administrative leave ends;

    c.    Directly or indirectly accessing, transferring, downloading, or otherwise using any of Plaintiffs and/or their affiliates' trade secrets, confidential and/or proprietary information, including, but not limited to, contact information of its independent distributor network for companies owned, supported, and/or serviced by LaCore, along with Plaintiffs' vendors, suppliers, and customers;

    d.      Directly or indirectly deleting, removing, or modifying any files or data on and/or received from Plaintiffs' computer(s), databases, e-mail servers/accounts, servers, or other electronic devices;

    e.      Soliciting and/or inducing any existing vendor and/or supplier of either Plaintiff to terminate or breach its contract or business relationship with either Plaintiff;

    f.      Forming and/or operating a company that sells individualized nutritional supplements and skin care based on the collection, assessment and/or processing of DNA; and,

    g.      Taking any action that would impair or diminish the value of Plaintiffs' property, assets, intellectual property, trade secrets, or other confidential or proprietary information.

61. **Harm to Plaintiffs is Imminent and Irreparable.** Harm to Plaintiffs is imminent and irreparable. Kearl's conduct is ongoing and has caused and will continue to cause irreparable harm to Plaintiffs. So long as Kearl's conduct continues it will be impossible to identify the extent of the harm to Plaintiffs and quantify their damages.

62. **No Adequate Remedy at Law.** In the absence of injunctive relief, Plaintiffs have no adequate remedy at law. It is essential that the Court immediately restrain Kearl from continuing the conduct described herein. Plaintiffs are willing to post a bond in connection with any temporary injunction, if required by the Court, in accordance with Rule 65(c) of the Federal Rules of Civil Procedure.

63. **Balance of Hardships.** Considering the balance of hardships between Plaintiffs and Kearl, a remedy in equity is warranted to restrain Kearl from continuing the conduct described herein, as previously enjoined in the State Court Lawsuit.

64. **Public Interests.** The public interests would not be disserved by a permanent injunction Kearl. In fact, the public interests in protecting trade secrets and other confidential information would be served by the requested permanent injunction against Kearl.

## VI. ATTORNEYS' FEES

65. Plaintiffs seek recovery of their reasonable and necessary attorney's fees from Kearl through trial and all appeals pursuant the parties' contracts, TUTSA and/or Section 38 of the Texas Civil Practice and Remedies Code.

### PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs requests Kearl be cited to appear and answer, and that upon final hearing, Plaintiffs have the following:

(1) a Temporary and Permanent Injunction be issued enjoining Kearl, his agents, servants, entities and those working in concert from the conduct described herein;

(2) judgment against Kearl for actual damages (including incidental, consequential and/or special damages) within the jurisdictional limits of this Court, together with pre-judgment and post-judgment interest as allowed by law;

(3) judgment against Kearl for exemplary damages;

(4) that the judgment for the damages above be determined to be nondischargeable pursuant to sections 523(a)(4) and (6) of the Bankruptcy Code;

(5) judgment against Kearl for reasonable attorneys' fees;

(6) costs of court; and,

(7) Plaintiffs be granted such other relief, at law or in equity, as is just and proper.

Respectfully Submitted this 20th day of November, 2023.

By: */s/ Carlisle A. Braun*
Carlisle A. Braun
State Bar No. 24058818
Joshua L. Weems
State Bar No. 24051502

**SAUNDERS, WALSH & BEARD**
6850 TPC Drive, Suite 210
McKinney, Texas 75070
Phone: (214) 919-3555
Fax: (214) 945-4060
Email: Carlisle@SaundersWalsh.com
Email: Josh@SaundersWalsh.com
*Attorneys for LaCore Enterprises, LLC and Link Biosciences, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of November, 2023, a true and correct copy of this document was electronically served on counsel for Debtor Michael Leroy Kearl, the Chapter 7 trustee, and any parties requesting notice herein, via the Court's ECF system.

*/s/ Carlisle A. Braun*
Carlisle A. Braun